UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 90-85-01 ML |
| | : | |
| RALPH H. CARTY | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Ralph H. Carty ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on September 24, October 15, and October 25, 2007. At the October 25, 2007, hearing, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, **I recommend that Defendant be sentenced to a term of imprisonment of twenty-five months to be followed by a term of supervised release for thirty-five months.**

**Background**

On May 8, 1992, Defendant, who had been found guilty of the Class A felony of receiving firearms after a prior felony conviction (Count II) and the Class C felony of possessing an unregistered rifle with a barrel length of less than sixteen inches (Count III), appeared for sentencing before the Honorable Raymond J. Pettine, Senior U.S. District Judge. Judge Pettine sentenced Defendant on Count II to fifteen years imprisonment

with sixty months of supervised release and on Count Three to fifty-seven months imprisonment (concurrent with Count Two) with thirty-six months of supervised release. Defendant was additionally ordered to pay a $5,000 fine.

On December 24, 2003, Defendant was released from the custody of the Federal Bureau of Prisons to the Commonwealth of Massachusetts. Defendant's supervised release term commenced on May 19, 2006, when he was released from state incarceration. On or about May 22, 2007, Supervising U.S. Probation Officer Kurt E. O'Sullivan initiated a Petition for Warrant for Offender under Supervision (the "Petition"), alleging that Defendant had violated four standard conditions of his supervised release. See Petition at 1-2. In response to the Petition, Chief U.S. District Judge Mary M. Lisi ordered the issuance of a warrant, see id. at 2, and on September 24, 2007, Defendant appeared on the warrant before this Magistrate Judge to answer to the Petition, see Docket.

## The Violation

The Supervised Release Violation Report (the "Violation Report") alleges that Defendant has violated the following conditions of supervision in the manner indicated:

**Standard Condition: While on supervision, Defendant shall not commit another federal, state, or local crime.**

On June 21, 2006, Defendant committed the offenses of disorderly conduct and disturbing the peace in Fall River, Massachusetts. Defendant was arrested by members of the Fall River Police Department on June 21, 2006, after he was involved in a fight with several others in the parking lot of Dunkin Donuts on Millikan Boulevard. On December 18, 2006, Defendant appeared in Fall River District Court and was found guilty by a

six-person jury.[1] He received a fine, and his case was continued to December 17, 2007, for a payment review.

**Standard Condition: While on supervision, Defendant shall not commit another federal, state, or local crime. Defendant shall not illegally possess a controlled substance.**

On August 2, 2006, Defendant committed the offenses of possession of cocaine and carrying a dangerous weapon (knife) in Fall River, Massachusetts. As to this violation, Defendant was arrested by members of the Fall River Police Department on August 2, 2006, at his apartment after he failed to register as a Level Three Sex Offender. The police found two knives and crack cocaine in Defendant's pants pockets. On December 18, 2006, Defendant appeared in Fall River District Court and was found guilty by a six-person jury. He was sentenced to one year in the House of Correction on both counts.

**Standard Condition: While on supervision, Defendant shall not commit another federal, state, or local crime. Defendant shall not illegally possess a controlled substance.**

On October 11, 2006, Defendant committed the offenses of possession with intent to deliver cocaine, providing false information, and conspiracy to violate drug laws in Somerset, Massachusetts. Defendant was arrested on this date by members of the Somerset Police Department after he and three others were involved in drug-related activities in a motor vehicle in the parking lot of the Quality Inn located at 1838 Wilbur Avenue. The police retrieved a glass pipe, a drug ledger, a hypodermic

---

[1] Although the Supervised Release Violation Report (the "Violation Report") states that Defendant was found guilty by a six-person jury, at the October 25, 2007, hearing, Defendant indicated that he pled guilty to the charges of disorderly conduct and disturbing the peace. See Tape of 10/25/07 hearing. For the purposes of this Report and Recommendation, the Court accepts Defendant's statement that he pled guilty to these charges. See id.

needle, two pills, money, crack cocaine, and heroin during the arrest of the four individuals. Defendant attempted to mislead the police officers by using the name of Richard Shaffer. On December 18, 2006, Defendant appeared in Fall River District Court and was found guilty by a six-person jury. He was sentenced to one year in the House of Correction on both counts.

**Standard Condition: Defendant shall report to the probation office in the district to which Defendant is released within seventy-two hours of release from custody of the Bureau of Prisons.**

On May 19, 2006, Defendant was released from the Department of Corrections in the Commonwealth of Massachusetts, and he did not report to the Probation Department for supervised release supervision. As to this violation, Defendant, who had been ordered to serve a sixty-month term of supervised release, failed to report to the Probation Department within seventy-two hours as required by this Court. He should have reported by May 22, 2006, after having been released by the Commonwealth of Massachusetts to the community on May 19, 2006.

**Travel**

Defendant appeared before this Magistrate Judge on September 24, 2007. At that time Defendant was advised of the Petition and of the grounds for the alleged violation. Defendant requested a three-week continuance, and the hearing was continued to October 15, 2007. On October 15th defense counsel asked for another continuance in order to consult further with Defendant, and the Court granted this request. On October 25, 2007, Defendant, both personally and through counsel, waived a violation hearing and admitted to the violations. This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. After receiving sentencing recommendations from both the Government and the

defense and also hearing from Defendant personally, the Court stated that it would take the matter under advisement and issue a report and recommendation. This is that Report and Recommendation.

**Law**

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of supervised release was previously imposed. Therefore, the term cannot be extended.

Pursuant to § 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than five years in prison if the offense that resulted in the term of supervised release was a

Class A felony and may not be required to serve more than two years in prison if the offense that resulted in the term of supervised release was a class C felony. In this case, Defendant was on supervision for a Class A felony and a Class C felony. Therefore, he may not be required to serve more than five years imprisonment upon revocation on Count Two and two years imprisonment upon revocation on Count Three.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here five years on Count Two and three years on Count Three), less any term of imprisonment imposed upon revocation of supervised release.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense,[2] or (iii) involves possession of a

---

[2] The term "controlled substance offense" is defined in §4B1.2(b) of the U.S.S.G.

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade B violation.[3]

Pursuant to §7B1.3(a)(1) of the U.S.S.G., upon a finding of a Grade A or B violation, the court shall revoke supervised release. Since Defendant has committed a Grade B violation, the Court shall revoke supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that

---

U.S.S.G. §4B1.2(b).

[3] The Violation Report indicates that Defendant committed a Grade A violation. However, pursuant to an agreement between the Government and Defendant, Defendant agreed to waive a hearing and admit to facts constituting a Grade B level violation. See Tape of 10/25/07 hearing. Based on his admission, the Court finds that Defendant committed a Grade B violation

Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. However, neither provision applies to this matter because the applicable sentencing guideline range with reference to Count II is 21-27 months.

According to §7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, Defendant has paid $778 toward his $5,000 fine. His balance as of May 22, 2007, is $4,247.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is five years on Count Two and three years on Count Three. There has not been any term of

imprisonment previously imposed for violations of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of VI at the time of sentencing. The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides that, for a Grade B violation with a criminal history category of VI, an imprisonment range of 21 to 27 months is warranted.[4] The statutory maximum term of imprisonment is 60 months on Count Two and 24 months on Count Three, for a total of 84 months.

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

## Disposition

**Recommendations By Government**

The Government recommended that Defendant receive a sentence of twenty-seven months incarceration followed by thirty-three months supervised release. The Government also recommended that Defendant be ordered to participate in and satisfactorily complete an inpatient and/or outpatient drug treatment program, to include periodic testing up to seventy-two drug tests per year as approved by the Probation Department, and pay the remaining balance of the $5,000 fine.

---

[4] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

**Defense's Recommendation**

Defense counsel, Edward C. Roy, urged the Court to recommend to the Bureau of Prisons that Defendant be placed in a halfway house for as long a period as possible. In making this request, Mr. Roy noted that Defendant had been released after being incarcerated for seventeen and a half years without the benefit of any transition program. Mr. Roy observed that the lack of such program appeared to have been a significant contributing factor in Defendant's return to criminal activity. Mr. Roy also requested that any additional period of supervised release which the Court might impose be limited to one year.

Defendant spoke on his own behalf. He indicated that after being released from prison he found that things had changed a great deal. Defendant stated that it was hard to find a job because no one wanted to hire him due to his criminal record. Defendant offered that all he wanted was a decent chance to succeed. His remarks suggested a belief that by being released back into the community after many years of incarceration without any transitional program, Defendant had almost been set up to fail.

**Court's Recommendation**

To the extent that Defendant seeks a recommendation that the Bureau of Prisons place him in a halfway house or other transitional facility before he is again released to the community, the Court has no hesitancy in making such a recommendation. The Court has no doubt that Defendant encountered great difficulty in finding employment after his release. Most employers ask applicants about their prior work history, and a lack of employment for more than seventeen years would certainly raise questions in the minds of most employers. The explanation that Defendant had been in prison would hardly assuage those concerns. Thus, the Court finds it plausible that

the fact that Defendant was not afforded a transition program, such as a stay in a halfway house or similar facility prior to his release, may have contributed to Defendant's inability to adjust successfully to life outside of prison.

To the extent, however, that Defendant seeks a sentence that is substantially less than the sentence recommended by the Government, the Court is not so persuaded. Defendant has admitted to multiple violations of supervised release, including three separate incidents involving new criminal activity. Two of the incidents involved possession of crack cocaine, and one involved the possession of heroin. This is strong evidence that Defendant returned to illegal drug use and that the incidents resulting in his arrest were not isolated aberrations from otherwise law abiding conduct but, rather, a continuation of long-standing criminal behavior. That behavior is amply reflected by his criminal history Category of VI.

The Court also notes that although Defendant has, in effect, complained that he did not receive the benefit of any transitional assistance, such as a stay in a halfway house prior to his release, Defendant did not seek any assistance from the Probation Department after he was released. To the contrary, he failed to report to the Probation Department, and this is one of the grounds for the instant violation.[5] Thus, to the extent Defendant contends that he was not given a fair chance to succeed after being released because of a lack of transition assistance, Defendant is at least partially responsible for that lack of support because he never sought assistance from his probation

---

[5] Defendant stated that he sent a letter to the Probation Department. Assuming that he did so and that such letter explained why Defendant could not report to the Probation Department within 72 hours of his release from custody, it would not excuse Defendant's failure to report to the Probation Department during the several months which followed. Apparently in recognition of this fact, Defendant chose not to contest this ground of violation.

officer.

Additionally weighing against a substantially lesser sentence is the fact that Defendant has already received the benefit of a reduction in the grade level of the violation as a result of his agreement with the Government. Without this agreement the applicable sentencing range for the violation of supervised release on Count II would have been 51 to 60 months.[6]

The sole consideration which weighs in favor of any reduction in the sentence recommended by the Government is that Defendant waived a violation hearing and admitted to the violation. It has been this Magistrate Judge's usual practice to take such waiver and admission into consideration and to make a small reduction in the sentence recommended. The rationale for such reduction is that Defendant's waiver and admission spares the Government from having to prove the violation and the Court from having to conduct a violation hearing. Consistent with that practice, the Court will recommend a sentence of twenty-five months imprisonment to be followed by a term of supervised release for thirty-five months. Defendant's request that the period of supervised release be limited to one year is rejected. The only basis which the Court can perceive for this request is that Defendant desires to be free of the constraints of supervised release at an earlier date. Given Defendant's history, the Court believes that the full period of supervision is warranted.

**Conclusion**

After considering the various factors set forth in 18 U.S.C.

[6] In fact, the guideline range for a Grade A violation with a criminal history category of VI (Defendant's category) is 51 to 63 months. Because the maximum sentence which may be imposed for a violation of supervised release for the offense charged in Count II is five years, the actual sentencing range which Defendant faced prior to his agreement with the Government was 51 to 60 months.

§ 3553(a) and for the reasons expressed above, I recommend that on Count II Defendant be sentenced twenty-five months imprisonment to be followed by thirty-five months supervised release. As special conditions of that supervised release I recommend that Defendant participate in and satisfactorily complete an inpatient and/or outpatient drug treatment program to include periodic testing up to 72 drug tests per year as approved by the U.S. Probation Department. I further recommend as a special condition of supervised release that Defendant be ordered to pay the balance of his $5,000 fine.[7]

On Count III, I recommend that Defendant be sentenced to twenty-four months imprisonment and that this sentence be concurrent with the sentence to be imposed on Count III. I further recommend as to Count III that there be no further period of supervised release.[8]

Lastly, I recommend that the Bureau of Prisons place Defendant in a halfway house (or similar transitional program) prior to his release from imprisonment on the sentences recommended above.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986);

---

[7] As noted previously, the Violation Report states that as of May 22, 2007, the balance on Defendant's fine was $4,247. See Violation Report at 3.

[8] A further period of supervised release on Count III would serve no practical purpose as Defendant could not be sentenced to any additional imprisonment on that count in the event of another violation.

Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
October 30, 2007